Garland Ray GREGORY, Jr.,
Petitioner and Appellant,

v.

Herman SOLEM, Respondent
and Appellee.

Nos. 16618, 16619.

Supreme Court of South Dakota.

Argued Oct. 16, 1989.

Decided Dec. 20, 1989.

Michael Butler, Richard Braithwaite, on the brief, Sioux Falls, for petitioner and appellant.

Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, Jeffry L. Bloomberg, Lawrence County State's Atty., Deadwood, for respondent and appellee.

GILBERTSON, Circuit Judge.

## ISSUES PRESENTED

Garland Ray Gregory, Jr. (petitioner) brings the following issues to this court for our resolution:

1. AT PETITIONER'S ARRAIGNMENT ON THE CHARGE OF CONSPIRACY TO COMMIT MURDER, WAS HE AWARE OF THE NATURE OF THE OFFENSE?

2. DID PETITIONER'S TRIAL COUNSEL NEGLECT TO INFORM PETITIONER OF THE ELEMENTS OF CONSPIRACY TO COMMIT MURDER, WHICH FAILURE CONSTITUTES INEFFECTIVE REPRESENTATION?

In addition, Herman Solem (respondent) has filed a notice of review in which he raises the following issue:

SHOULD PETITIONER'S AMENDED PETITION FOR WRIT OF HABEAS CORPUS HAVE BEEN DISMISSED PURSUANT TO SDCL 21–27–16.1?

We find respondent's issue dispositive of this appeal and affirm the trial court's denial of the petition albeit for a different reason. *City of Mitchell v. Beauregard*, 430 N.W.2d 704 (S.D.1988).

## PROCEDURAL HISTORY

On March 13, 1980, pursuant to a plea bargain, petitioner pled guilty to conspiracy to commit murder. In exchange, the state dismissed a companion murder charge and agreed to request a sentence of life imprisonment rather than seek the death penalty. The trial court accepted petitioner's guilty plea and sentenced him to life imprisonment. Following the sentence, petitioner did not file a direct appeal.

On January 27, 1981, petitioner sought post conviction relief. The circuit court denied this request. Upon appeal this court held that the trial court substantially complied with SDCL ch. 23A–7 in its determination that there was a sufficient factual basis for petitioner's guilty plea and that such plea was knowingly, intelligently and voluntarily entered. We remanded, however, for entry of specific findings and conclusions on whether petitioner was advised of 1) the nature of the conspiracy charge, 2) the consequences of a guilty plea, and 3) for a determination of whether petitioner's guilty plea was a voluntary and intelligent choice among alternative courses of action. *See Gregory v. State*, 325 N.W.2d 297 (S.D.1982) (hereinafter *Gregory I*).

The circuit court's findings of fact and conclusions of law were affirmed in *Gregory v. State*, 353 N.W.2d 777 (S.D.1984) (hereinafter *Gregory II*). Therein we held:

[T]he record in the instant case, when viewed in the totality of the circumstances, fairly supports the finding that petitioner understood the nature of the charges against him and that his guilty plea was accepted in compliance with both statutory and constitutional requirements.

353 N.W.2d at 780.

Petitioner next filed a petition for writ of habeas corpus in the United States District Court for the District of South Dakota. Relief was denied. Upon appeal the district court's decision was affirmed in *Gregory v. Solem*, 774 F.2d 309 (8th Cir.1985). The Eighth Circuit found sufficient evidence in the record to establish a factual

basis for the acceptance of the guilty plea. The federal appeals court further concurred with this court's analysis in *Gregory II* by finding that his guilty plea was knowing, intelligent and voluntary.

On November 25, 1986, petitioner filed another application for writ of habeas corpus in Lawrence County circuit court.[1] In that petition he raised the two issues that he brings to this court as grounds for appeal. Prior to any hearings, respondent made a motion to dismiss pursuant to SDCL 21–27–16.1. Respondent argued that petitioner's issues had either been previously adjudicated or waived. The trial court agreed and dismissed. Upon appeal in *Gregory v. Solem*, 420 N.W.2d 362 (S.D. 1988) (*Gregory III*), this court reversed. We held that petitioner was entitled to an evidentiary hearing to attempt to show reasonable cause why his current issues had not been raised in the previous petition.

Thereafter the circuit court on remand held such a hearing. At the conclusion of this hearing, respondent renewed its motion to dismiss under SDCL 21–27–16.1. Such motion was denied by the circuit court. The circuit court then held against petitioner on the merits of the issues raised in his habeas corpus petition. Both parties now appeal to this court as set forth above.

### ISSUE PRESENTED
### SHOULD PETITIONER'S AMENDED PETITION FOR WRIT OF HABEAS COR-

PUS HAVE BEEN DISMISSED PURSUANT TO SDCL 21–27–16.1? [2]

■ The scope of review is limited in a state habeas corpus proceeding because the remedy is in the nature of a collateral attack upon a final judgment. *Goodroad v. Solem*, 406 N.W.2d 141 (S.D.1987). A writ of habeas corpus will provide relief for a petitioner if any of the grounds of SDCL 21–27–16 are met. This court will not overturn the factual findings of the circuit court unless they are clearly erroneous. *Id.* at 145.

■ SDCL 21–27–16.1 is the statute which both parties cite in support of their position:

All grounds for relief available to a petitioner under this chapter shall be raised in his original, supplemental or amended application. Any ground not raised, finally adjudicated or knowingly and understandingly waived in the proceedings resulting in his conviction or sentence or in any other proceeding that the applicant has taken to secure relief from his conviction, or sentence, may not be the basis for a subsequent application, unless the court finds grounds for relief asserted which for *reasonable cause* were omitted or inadequately raised in the original, supplemental or amended application. (emphasis added).[3]

1. There have been no less than seven attorneys representing petitioner since his initial charge of conspiracy to commit murder. To clarify the facts of this case, the following appearances should be noted. Attorneys Wolsky and Smit represented him through arraignment and sentencing. Mr. Mueller represented him on his first habeas petition and *Gregory I.* Shortly after remand, Mueller left to become a magistrate and was replaced by Mr. Jackley. Jackley represented petitioner in future remand proceedings and *Gregory II.*

2. Petitioner's consistent claim throughout is that he was not aware of the nature of the offense of conspiracy to commit murder. Arguably, this issue was decided against petitioner in *Gregory II,* and thus res judicata would apply. In *Gregory III,* this court remanded to the circuit court for a further evidentiary hearing on his present petition. In holding against petitioner on this issue, the circuit court did not rest its ruling on res judicata but rather went into the merits,

concentrating on whether petitioner was advised by his trial attorneys of the elements of conspiracy to commit murder. Respondent did not file a notice of review on this point. Therefore, the issue of res judicata is not before this court.

3. SDCL 21–27–16.1 and its predecessor, SDCL 23A–34–15, appear to be patterned after section eight of the Uniform Post Conviction Relief Act. Petitioner and respondent advance arguments concerning the interpretation of SDCL 21–27–16.1 which cannot be accepted by this court.

Respondent argues that SDCL 21–27–16.1 should be strictly construed as it is more limited than its predecessor, SDCL 23A–34–15. Actually, the only significant change in the two statutes is that the second sentence of 21–27–16.1 now requires that the petitioner's grounds be raised *and* adjudicated or knowingly and understandably waived in the initial proceeding or face a possible prohibition at later habeas pro-

■ In *Gregory III*, we noted petitioner's burden of proof of "reasonable cause" but did not feel it necessary to go into an in-depth discussion of what this standard required of a habeas petitioner. Respondent argues that the "reasonable cause" requirement of SDCL 21–27–16.1 should be interpreted in accordance with the United States Supreme Court's "cause and prejudice" standard of review. *See Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Petitioner asks that such a standard be rejected and opts for a "reasonable man" standard. The circuit court applied the cause and prejudice test advanced by respondent. However, having done so, it concluded that petitioner had apparently met such a standard and denied respondent's motion to dismiss.[4]

■ The seminal case concerning the "cause and prejudice" test is *Wainwright v. Sykes, supra.* This standard was adopted therein, but the United States Supreme Court felt it unnecessary to define its specific elements. It did, however, adopt a general rule that for a habeas petitioner to avoid dismissal of a subsequent petition for failure to raise the issue in a prior proceedings, the petitioner must show:

1. Cause for his omission or failure to previously raise the grounds for habeas relief; and

2. Actual prejudice resulting from the alleged constitutional violation.

Later, in *Murray v. Carrier, supra*, the Supreme Court set forth an in-depth analysis of what constitutes "cause":

We think, then, that the question of cause for procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, supra, we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default. Instead, we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel or that "some interference by officials" made compliance impracticable, would constitute

ceedings. Under its predecessor, SDCL 23A–34–15, such a prohibition could apply unless the grounds were raised *or* finally adjudicated or knowingly and understandably waived. SDCL 21–27–16.1 cures the situation where a petitioner raises a point, the court in the initial habeas hearing fails to rule on it, and yet this statutorily results in a prohibition of the subject in future proceedings.

Petitioner argues that waiver can occur pursuant to the second sentence of the statute only by a knowing and understanding waiver. This is also incorrect. Waiver can occur when grounds are raised and adjudicated or by a knowing and understanding waiver.

4. The circuit court's exact rationale on this issue is unknown. All that is contained in the record is a one page order denying the motion to dismiss.

Prior to 1983, findings of fact and conclusions of law were required in habeas proceedings by

SDCL 23A–34–18. With the repeal of this chapter and the codification of the present habeas chapter, SDCL 21–27, this explicit requirement was dropped. A reason for this omission may be the Legislature's belief that the general provision on civil findings of fact and conclusions of law, SDCL 15–6–52(a), imposed the same requirement. Habeas corpus proceedings are civil in nature. *See* SDCL 15–6–81(a) and SDCL ch. 15–6, Appendix A.

To insure proper appellate review, findings of fact and conclusions of law should be entered hereafter on motions made pursuant to SDCL 21–27–16.1. In the case at bar, remand is unnecessary because of the circuit court's findings of fact and conclusions of law on the petitioner's two claims for relief, together with the court record. These findings and the record provide a basis for our disposition of this appeal.

cause under this standard. (citations omitted).

477 U.S. at 488, 106 S.Ct. at 2645, 91 L.Ed.2d at 408. In addressing the second prong, that being "prejudice," the Supreme Court noted that "[t]he habeas petitioner must show 'not merely that errors at ... trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.,* 477 U.S. at 494, 106 S.Ct. at 2648, 91 L.Ed.2d at 412.[5] (emphasis original).

This cause and prejudice standard has also received increasing acceptance among the various state jurisdictions dealing with this issue. *See Valeriano v. Bronson,* 12 Conn.App. 385, 530 A.2d 1100 (1987); *Cherry v. Abbott,* 258 Ga. 517, 371 S.E.2d 852 (1988); *Polly v. State,* 355 N.W.2d 849 (Ia. 1984);[6] *Irving v. State,* 498 So.2d 305 (Miss.1986); *Passanisi v. Dir. Nev. Dept. of Prisons,* 769 P.2d 72 (Nev.1989); *Wells v. Shulsen,* 747 P.2d 1043 (Utah 1987); *Epperly v. Booker,* 235 Va. 35, 366 S.E.2d 62 (1988); *Cutbirth v. State,* 751 P.2d 1257 (Wyo.1988).

This court is well aware that in recent years, habeas petitioners have sought relief from the federal and state courts of South Dakota in a manner which has these proceedings going to and from each court on a frequent basis. The case at bar is an example in point. With the adoption of the "cause and prejudice" doctrine in all federal courts, the use of the same criteria by this court would facilitate the task of federal courts in the examination of these issues when raised in a federal post-conviction proceeding in which review is sought of a state court conviction in South Dakota. *Cutbirth, supra* at 1262. Likewise, a previous federal determination under the same standard as adopted by this court would avoid attempted relitigation of the same issue in a subsequent state proceeding. For the foregoing reasons, we adopt the "cause and prejudice" standard as the "reasonable cause" showing that a habeas corpus petitioner must make under SDCL 21–27–16.1.

■ The issues raised by petitioner in his first habeas petition and its subsequent evidentiary hearing are set forth in *Gregory I.* However, that decision resulted in a partial reversal and remand to the trial court for further proceedings. The parties to this appeal vigorously argue over the effect of SDCL 21–27–16.1 on the subsequent proceedings.

After the remand from this court for further findings in *Gregory I,* petitioner's then attorney, Mr. Mueller, believed that the state did not have sufficient evidence in the record to successfully overcome petitioner's habeas challenge. He informed petitioner of this opinion. Mueller also wrote the habeas court and argued against reopening the record.

---

**5.** To avoid undue harshness in the application of the "cause and prejudice" rule, the United States Supreme Court has adopted three exceptions in which the application of the rule is waived. None are applicable here.

1. A novel legal claim which was not reasonably available to trial counsel at the time of default. *Smith v. Murray,* 477 U.S. at 536, 106 S.Ct. at 2667, 91 L.Ed.2d at 446.

2. Ineffective assistance of counsel. *Murray v. Carrier,* 477 U.S. at 488, 106 S.Ct. at 2645, 91 L.Ed.2d at 409.

3. A fundamental miscarriage of justice such as a constitutional violation which has probably resulted in the conviction of one who is actually innocent. *Id.,* 477 U.S. at 496, 106 S.Ct. at 2649, 91 L.Ed.2d at 413.

**6.** In *Polly,* the Iowa Supreme Court summarized the rationale from the above cited federal cases which justified the adoption of the "cause and prejudice" standard:

These included extension of the trial ordeal for both society and the accused, degradation of the prominence and importance of the original criminal trial, diminution of the mutual concern of trial counsel and courts for the sanctity of constitutional safeguards when the right to correct such errors on postconviction is readily available, lessening of prisoner focus on good behavior and possible rehabilitation as prisoners concentrate on postconviction rather than parole for their release, and societal inability to punish the guilty when postconviction relief is granted so long after commission of the crime that retrial is a practical impossibility. Another reason ... is that defense counsel deliberately would elect not to appeal, thus providing the opportunity to importune a second (postconviction) district court on their client's behalf before submitting claims to an appellate tribunal. 355 N.W.2d at 855–856.

After Mueller's departure, petitioner's new attorney, Mr. Jackley, talked to Mueller, reviewed the court file and came to the same conclusion. On two occasions, Jackley wrote petitioner and advised him of this opinion and requested a response. Petitioner wrote back to Jackley and concurred with this trial tactic. Apparently the state was also somewhat nervous about the quality of its existing record as it sought an additional evidentiary hearing. Jackley, on behalf of petitioner, opposed this request. (See the Appendix for excerpts of this correspondence.)

Attorney Jackley testified at petitioner's most recent habeas hearing that he · reviewed the entire record and agreed with Mueller's conclusion that petitioner has received competent representation prior to and at this arraignment. This was a second reason that Jackley saw no benefit to reopen the habeas record to allege ineffective assistance by trial counsel.

A third reason Jackley did not want the record reopened was that it would give the state a chance to introduce a private deposition given by petitioner to his trial attorneys in which petitioner admitted certain matters of his legal knowledge concerning

the lack of possibility of parole from a life sentence; this knowledge was diametrically opposed to his current legal position and testimony. Jackley felt that this deposition could destroy petitioner's credibility and veracity with the habeas court.

The circuit court sided with petitioner and opted not to hold any further evidentiary hearings. However, this strategy backfired on petitioner. The circuit court ruled in favor of the state. This court affirmed in *Gregory II.* The above clearly shows that petitioner, with the concurrence of his counsel, made an informed and calculated decision not to raise these issues when he had a chance to do so.[7] Such a scenario is clearly well short of the establishment of "cause", as set forth in *Smith v. Murray, supra.*[8]

■ An examination of the second requirement, that being prejudice, also shows that petitioner's claim is found wanting. The circuit court, after this court's remand in *Gregory III,* entered the following findings:

> The Court finds that Attorney Smit repeatedly explained the elements of the crime of conspiracy to Gregory.
>
> \*    \*    \*    \*    \*    \*

---

**7.** Petitioner admits that he testified at his 1981 habeas hearing that he had no complaint about the quality of his representation by Wolsky and Smit. He now seeks to distinguish this prior position by arguing that in 1981 he could not foresee this court's ruling in *Gregory II,* which he interprets to create a due process right to the criminal defendant that his attorney explain the elements of the crime to the client. This is a misinterpretation of our holding.

In *Gregory II* we noted the long-standing due process requirement that before a plea can be voluntarily entered, the defendant must possess "an understanding of the nature of the charge." Cited with approval in this case was the analysis of the United States Supreme Court in *Henderson v. Morgan,* 426 U.S. 637, 647, 96 S.Ct. 2253, 2258, 49 L.Ed.2d 108, 115 (1976):

> Normally the record contains *either* an explanation of the charge by the trial judge, *or* at least a representation by defense counsel that the nature of the offense has been explained to the accused. (emphasis added.)

The ultimate burden of assuring that a defendant is advised of the nature of the charge against him falls upon the trial court and not upon the defendant's attorney. *Application of Garritsen,* 376 N.W.2d 575 (S.D.1985).

**8.** A party to an action may not make a voluntary decision concerning a trial tactic and then

when they find themselves in an undesirable position as a result of that legal posture, attempt to proceed in a subsequent inconsistent manner. Judicial estoppel bars such gamesmanship. *Federal Land Bank of Omaha v. Johnson,* 446 N.W.2d 446 (S.D.1989); *Warren Supply v. Duerr, Pliley, Thorsheim Dev.,* 355 N.W.2d 838 (S.D. 1984).

The United States Supreme Court in *Smith v. Murray* applied this rationale to the use of the "cause and prejudice" standard in habeas cases:

> [D]efense counsel may not make a tactical decision to forgo a procedural opportunity—for instance, to object at trial or to raise an issue on appeal—and then when he discovers that the tactic has been unsuccessful, pursue an alternative strategy.... The encouragement of such conduct ... would undermine the accuracy and efficiency of the state judicial systems to the detriment of all concerned. Procedural defaults of this nature are, therefore, inexcusable, and cannot qualify as "cause" for purpose of federal habeas corpus review.

477 U.S. at 534, 106 S.Ct. at 2666, 91 L.Ed.2d at 444 (*quoting* from *Reed v. Ross,* 468 U.S. 1, 14, 104 S.Ct. 2901, 2909, 82 L.Ed.2d 1 (1984)).

It is therefore the finding of this Court that the Petitioner knew the nature of the charges against him, and that the same were explained to him by counsel and that the Petitioner was specifically aware of the nature and elements of the conspiracy charge to which he pled.

In making such findings, the circuit court chose the credibility of attorney Smit over that of petitioner and found that petitioner's testimony was "open to question" in regards to his entire testimony. The court further found that his memory of conversations with his trial counsel was "extremely limited" and that petitioner specifically conspired with co-defendant Archambult to effect the death of Michael Young. Based on an examination of the record, these findings are not clearly erroneous. *Goodroad, supra* at 145.

Any claim of prejudice is further negated by looking to the reason petitioner pled guilty in the first place. He knowingly entered a guilty plea to the conspiracy charge with a recommended life sentence to avoid the "99–1 chance" his trial counsel predicted that he could be convicted by a jury of murder and the possible imposition of the death penalty. *Gregory v. Solem*, 774 F.2d at 316.

Therefore, it is this court's conclusion that petitioner has failed to establish "prejudice" in that there is no showing that he sustained actual and substantial disadvantage "infecting his entire trial with error of constitutional dimensions."

## CONCLUSION

■ To the greatest extent possible, all issues which bear on the criminal charge should be determined at trial; the accused is in the courtroom, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens. Any procedural rule which encourages the result that the trial be as free of error as possible is thoroughly desirable.

The trial on the merits is to be the "main event," rather than a "tryout on the road" for what will later be the determinative habeas hearing. *Wainwright v. Sykes*, 433 U.S. at 90, 97 S.Ct. at 2508, 53 L.Ed.2d at 610.

Petitioner's request for a writ of habeas corpus is denied for failure to show reasonable cause pursuant to SDCL 21–27–16.1 why he did not raise the same issues in his previous habeas proceeding.

Affirmed.

WUEST, C.J., and MORGAN, J., concur.

HENDERSON, J., concurs in result without writing.

SABERS, J., concurs in result.

GILBERTSON, Circuit Judge, for MILLER, J., disqualified.

## APPENDIX

Petitioner claims that he was not entitled to a second evidentiary hearing after the *Gregory I* remand because it was prohibited. No such limitation can be found in that opinion. Additionally, it is clear from the correspondence of petitioner's attorneys at that time, that the state would have been very agreeable to a stipulated reopening of the record. However, petitioner's counsel were using their best efforts to block any further hearings.

On December 18, 1982, Mueller wrote the circuit court and the state:

First, it is my position the Record must remain as forwarded to the Supreme Court and that no additions or deletions can be made thereto. In other words, this Court's Findings and Conclusions are limited to the record as originally submitted to the Supreme Court and from which they are bound to make their final decision. It is what the record then showed and no post mortem material is to be added to the same.

After Jackley replaced Mueller, Jackley wrote petitioner on April 4, 1983:

Again, Garland, Mr. Mueller is in accord with this conclusion, also. It is simply

that Judge Moses has to issue the above mentioned and discussed findings of fact and conclusion of law based on the record, that was before him after your post conviction hearing—that is, the record upon which he issued the original findings of fact and conclusions of law. This is the same record which was sent to the Supreme Court as a part of your appeal. I think this is of great advantage to you. It does not give the State a further chance to put on any evidence. I firmly believe, particularly after reading the transcript of the Change of Plea and the Post Conviction Relief Hearing, that it will be difficult if not impossible for Judge Moses to find that you had been informed of the necessary things....

In a nutshell, I am recommending *no* further hearing at this time. Make the Judge decide what the Supreme Court wants on what he already has on these questions. I am not, however, going to communicate these decisions to Judge Moses until such time as I get your thinking on the situation and your approval of this course of action. So, let me know what you think as soon as possible (emphasis original).

Again, on April 11, 1983, Jackley write petitioner:

The State doesn't have anything to go on on these particular matters and if no further litigation is done, I don't see how Judge Moses can find that you were adequately protected in these areas.

Again, I will wait to hear from you on a final answer as to whether or not you would want any further hearing in light of the above.

On April 13, 1983, petitioner responded to Jackley:

I just feel I was taken for a ride the first time around by [the trial] attorneys who I presume let their moral beliefs interfere with their chosen profession ("Defense Attorneys"), and did not emit their full capabilities in a defense on my behalf.

On April 18, 1983, petitioner again responded to Jackley:

Received your letter dated April 11, 1983 and in answer to it I again submit; I feel comfortable in your making any and all decisions that are strategically appropriate in gaining my return to court.

On April 29, 1983, Jackley wrote the trial court:

I am in basic agreement with Mr. Mueller's conclusions concerning the posture of the case which he expressed in his letter to Judge Moses and Craig Grotenhouse [state's attorney] dated December 18, 1982. That is:

First, the Supreme Court's decision and Order dated October 27, 1983, indicated that the case was remanded for entry of specific findings and conclusion on whether appellate was advised of the nature of the charge and consequences of his plea and for a determination of whether appellant's guilty plea was a voluntary and intelligent choice among alternative choices of action.

Those findings, conclusions and the determination must be made based upon the record as originally submitted to the Supreme Court and from which they must make their final decision. Nothing additional is to be included, and therefore, in short, there should be no additional hearings and no additional evidence added to the record.

On June 13, 1983, Jackley wrote petitioner:

I did have a conversation with a member of the State Capitol Attorney General's staff the other day, and he indicated that they as well as the Lawrence County State's Attorney's office do want a further hearing, if for no other reason then they don't feel they got their case fully presented at the last hearing. This is a good indication to me that we should avoid any further hearings if at all possible.

On June 22, 1983, Jackley wrote petitioner:

Bad news, but not totally unexpected. Judge Moses has issued a memorandum opinion ... and has found in favor of the state....

I am still of the opinion that we were better off in not having any additional hearings. The State has knowledge of a deposition transcript taken by a court reporter with you and your attorneys Smit and Wolsky. Had they been able to get that in, I understand, talking with the Attorney General's Office that it would have made their case. As it is, we are again limited to the original file and hearing and that is all Judge Moses has used, and all that the Supreme Court will use in appeal.

On June 24, 1983, petitioner wrote Jackley in response:

The contents of the deposition is not so damaging that it would destroy my chances of obtaining a new trial. But as· you stated, it would complicate matters.

SABERS, Justice (concurring in result).

I agree with the majority in denying Gregory's petition for a writ of habeas corpus because Gregory failed to show reasonable cause pursuant to SDCL 21–27–16.1 "why he did not raise the same issues in his previous habeas proceeding." I also agree with the letter and the spirit of the "Conclusion." However, I would not adopt the federal "Cause and Prejudice test" for several reasons:

1. There is no need to do so, as the South Dakota statute is clear.

2. It unduly complicates an already complicated area of the law.

3. It unduly injects a new element of "prejudice" contrary to the plain wording of SDCL 21–27–16.1.

SDCL 21–27–16.1 provides in part:

Any ground not raised, finally adjudicated or knowingly and understandingly waived ... may not be the basis for a subsequent application, unless the court finds grounds for relief asserted which for reasonable cause were omitted or inadequately raised[.]

In other words, unless one can show reasonable cause why his grounds for relief were omitted, or inadequately raised, he cannot raise them as grounds for relief. Stated affirmatively: one can assert grounds for relief only if he can show reasonable cause why they were omitted or inadequately raised before.

This statutory language is clear. It has nothing to do with prejudice and it should have nothing to do with the federal "Cause and Prejudice test."

In *Gregory III*, we held that Gregory was entitled to an evidentiary hearing to attempt to show reasonable cause why his current issues had not been raised in the previous petition. *Gregory v. Solem*, 420 N.W.2d 362 (S.D.1988). We did not hold that he must show reasonable cause *and* prejudice, and we should not do so now.